Lindsay Ryan (SBN 258130)
Alex Polishuk (SBN 265349)
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: 310-556-1801
Facsimile: 310-556-1802____
Email:      lryan@polsinelli.com
            apolishuk@polsinelli.com

Attorneys for Defendant
STERIGENICS U.S., LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER VALLEJO, individually and on behalf of others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>STERIGENICS U.S., LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>          Defendants, | Case No.  '20 CV 1788 AJB  AHG<br><br>[San Diego Superior Court Case No.37-2020-00027438-CU-OE-CTL]<br><br>**DEFENDANT STERIGENICS U.S., LLC'S  NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>Complaint Filed:   August 5, 2020<br>Trial Date:        None Set |

1

DEFENDANT STERIGENICS U.S., LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446
74575803.4

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**:

PLEASE TAKE NOTICE that Defendant Sterigenics U.S., LLC ("Defendant"), by and through its counsel, hereby removes the above-referenced action from the Superior Court of the State of California for the County of San Diego (the "State Court"), in which the action is currently pending, to the United States District Court for the Southern District of California on the grounds that this Court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of 2005), 1441, and 1446 and all other applicable bases for removal.  In support of this Notice of Removal, Defendant avers as follows:

## I.   STATEMENT OF JURISDICTION

1.   This Court has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), which amended 28 U.S.C. § 1332 to provide that a putative class action is removable to federal court if the proposed class consists of at least 100 members; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and one member of the proposed class is a citizen of a state different from any defendant.  *See* 28 U.S.C. § 1332(d).  The Act authorizes removal of such actions pursuant to 28 U.S.C. §§ 1441(a) and 1446.  As demonstrated below, this action meets all of CAFA's removal requirements and is timely and properly removed by the filing of this Notice.

## II.   PLEADINGS, PROCESS AND ORDERS

2.   On or about August 5, 2020, Plaintiff Alexander Vallejo ("Plaintiff") filed a Complaint in the Superior Court of the State of California in and for the County of San Diego as against Defendant Sterigenics U.S., LLC, entitled *Alexander Vallejo, individually and on behalf of others similarly situated v. Sterigenics U.S., LLC, a Delaware limited liability company; and Does 1 through 50, inclusive*, Case No.: 37-2020-00027438-CU-OE-CTL  (hereinafter the "Complaint" in the "State Court Action").  Attached hereto as **Exhibit A** is a true and correct copy of the Complaint.

3.      The Complaint is a putative class action alleging the following causes of action: (1) failure to pay all overtime wages (Lab. Code §§ 510, 1198); (2) failure to provide meal periods (Lab. Code §§ 226.7, 512); (3) failure to authorize and permit rest periods (Lab. Code § 226.7); (4) failure to pay minimum wages (Lab. Code §§ 1194, 1197, 1197.1);  (5) failure to pay all wages due at time of termination of employment (Lab. Code §§ 201-203); (6) failure to comply with itemized employee wage statement provisions (Cal. Lab. Code §§ 226(a)); (7) failure to reimburse expenses (Lab. Code §§ 2800, 2802); and (8) violation of unfair competition law (Bus. & Prof. Code §§ 17200, *et seq*.).

4.      On August 12, 2020, Plaintiff's counsel personally served Defendant's registered agent for service of process with the Complaint and the following documents:

**Exhibit B:**  Summons

**Exhibit C:**  Civil Case Cover Sheet

**Exhibit D:** Notice of Case Assignment and Case Management Conference

**Exhibit E:**  Alternative Dispute Resolution (ADR) Information Packet

**Exhibit F:**  Plaintiff's Notice of Posting of Jury Fees

5.      Defendant is informed and believes that the aforementioned documents and exhibits constitute all of the process, pleadings and orders on file in the State Court Action.  *See* 28 U.S.C. § 1446(a).

6.      Defendant is informed and believes that there has been no service of process upon any "Does," which are fictitious defendants and therefore disregarded for purposes of this removal.  *See* 28 U.S.C. § 1441(a).

7.      By filing this notice of removal, Defendant does not intend to waive, and hereby reserves, any objections as to venue, the legal sufficiency of claims alleged in the State Court Action Complaint, and all other defenses.  Defendant reserves the right to supplement and amend this notice of removal.

DEFENDANT STERIGENICS U.S., LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446
74575803.4

## III.   JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

8.     Section 4 of CAFA sets forth the general rule that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2).

9.     Section 4 of CAFA further states that the jurisdictional rule set forth in 28 U.S.C. § 1332(d)(2) applies only to class actions in which the number of members of all proposed plaintiff classes, in the aggregate, is 100 or more.  *See* 28 U.S.C. § 1332(d)(5).

10.    This Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), and this action may be removed by Defendant pursuant to the provisions of 28 U.S.C. § 1441(a), because the proposed plaintiff class consists of at least 100 members, the total amount in controversy exceeds $5,000,000, and there is diversity between at least one proposed class member and one defendant.

11.    Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. § 84(b), 1441, and 1446(a).  This action was originally brought in the San Diego County Superior Court, which is located within the Southern District of California.  Venue is proper with this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

### A.   The Putative Class Contains At Least 100 Members

12.    Plaintiff brought this action on behalf of himself and all others similarly situated as a class action pursuant to California Code of Civil Procedure § 382, a state statute authorizing an action to be brought by one or more representative persons as a class action.  *See* Exh. A (Complaint), ¶ 11.  Plaintiff seeks to represent "[a]ll current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's

DEFENDANT STERIGENICS U.S., LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446
74575803.4

complaint up until the time that notice of the certified class action is provided to the class" (hereinafter referred to as the "Putative Class Members"). *Id.* at ¶ 12.

13.     In the Complaint, Plaintiff alleges that the Putative Class Members are "so numerous that joinder of all members of the Class is impracticable." *Id.* at ¶ 14(a) and (d).

14.     Based on a review of its employment records, Defendant has determined that there are approximately 233 Putative Class Members, defined as all individuals who Defendant has employed in California between August 5, 2016 and August 13, 2020 as an hourly, non-exempt worker. *See* Declaration of Kimberly Mirabelli ("Mirabelli Decl.") ¶ 6. Accordingly, there are more than 100 Putative Class Members.

**B.     There Is Diversity Of Citizenship Between At Least One Proposed Class Member And One Defendant**

15.     CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C §§ 1332(d)(2)(A); 1453(b). Complete diversity of citizenship exists here because Plaintiff and Defendants are citizens of different states, since Plaintiff is a citizen of California, while Sterigenics is a citizen of Delaware, Illinois and Ohio.

16.     **Plaintiff's Citizenship.** For diversity purposes, a person is a "citizen" of the state in which they are domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *See Kanter v. Warner-Lambert Clew & Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986)). According to the Complaint, at the time this action was commenced and at the time of removal, Plaintiff was "an individual residing in the County of San Diego, State of California." Exh. A (Complaint), ¶ 6. Accordingly, Plaintiff is a citizen of the State of California for purposes of removal. *See, e.g., Mondragon v. Capital One Auto Finance*, 776 F.3d 880, 885-86 (9th Cir. 2013) (holding that, in connection with removal to federal court, a

person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change").

17.   **Defendant's Citizenship.**  For purposes of diversity jurisdiction, a limited liability company is a citizen of every state of which its owners/members are citizens. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  In § 1332(d)(10), however, CAFA seemingly carves out an exception to that rule, providing that "an unincorporated association shall be deemed a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  *See also Abrego Abrego v. The Dow Chem. Co*., 443 F.3d 676, 684 (9th Cir. 2006).[1]

18.   Defendant is a Delaware limited liability company with its headquarters and principal place of business in Oak Brook, Illinois. (Mirabelli Decl. ¶ 3); *See, e.g.,* California Secretary of State Business Portal website at https://businesssearch.sos.ca.gov/ (LP/LLC Name Searched: "STERIGENICS U.S."). Accordingly, if Defendant is properly considered an unincorporated association, it is a citizen of Delaware and Illinois.

19.   Even if Defendant's citizenship is determined by the citizenship of its members, it still is not a citizen of California for diversity purposes.  The sole member of Defendant is Sotera Health LLC, which was formed in Delaware and has its headquarters and principal place of business in Ohio.  *See* Mirabelli Decl. ¶ 4.  The sole member of Sotera Health LLC is Sotera Health Holdings, LLC, which was formed in Delaware.  *Id.*  As the name suggests, Sotera Health Holdings, LLC is a holding

---

[1] In the Ninth Circuit, whether an LLC is "an unincorporated association" for CAFA purposes under § 1332(d)(10) remains an open question.  Nonetheless, the Fourth Circuit – the only federal circuit to expressly resolve the question – offers persuasive guidance.  In *Ferrell v. Express Check Advance of SC LLC*, 491 F.3d 698 (4th Cir. 2010), the Fourth Circuit expressly held that an LLC is properly considered an "unincorporated association" within the meaning of § 1332(d)(10) "and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business." *Id*. at 700.

company.  *Id.*  It does not itself conduct any business in California or anywhere else.  *Id.*  To the extent it has headquarters or a principal place of business, they are in Ohio.  *Id.*  The sole member of Sotera Health Holdings, LLC is Sotera Health Topco, Inc., a Delaware corporation with its headquarters and principal place of business in Ohio.  *Id.*; *see* 28 U.S.C. 1332(c)(1) (for diversity purposes, "[a] corporation shall be deemed a citizen of every State by which it has been incorporated and of the State or foreign state where it has its principal place of business"); *see also Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010) (for purposes of removal, the "principal place of business" is determined by the "nerve center" test whereby an entity is deemed to be a citizen of the State where its officers direct, control and coordinate activities).  Therefore, even when looking to the citizenship of Defendant's members, Defendant could only be a citizen of Delaware, Illinois and Ohio – but not California – for diversity purposes.  *See Johnson, supra*, 437 F.3d at 899.

20.     **Doe Defendants.**  Plaintiff has also named as Defendants Does 1 through 50.  For purposes of removal based on diversity, "the citizenship of Defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(b).  The existence of the alleged Doe Defendants thus does not impact this Court's removal jurisdiction.  *See Albrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied to CAFA removal).

### C.     The Alleged Amount In Controversy Exceeds $5,000,000

21.     Under CAFA, the articulated claims of all class members are aggregated to determine if the amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  Significantly, Congress intended federal jurisdiction to exist under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Staff of S. Comm. on the Judiciary, 109th Cong., *Rep. on The Class Action Fairness Act of 2005*, 42 (Comm. Print 2005).  The Senate Judiciary Committee's Report on the final version

of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

22.     When determining the amount that a plaintiff has placed in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal citations and alterations omitted)). A district court may consider the allegations of the complaint and the contents of the removal petition and any supporting evidence in determining whether the jurisdictional amount has been established. *See Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

23.     Defendant denies Plaintiff's allegations of misconduct, particularly in light of the Complaint's bare-bone allegations which omit any factual allegation and merely parrot statutory obligations. Defendant intends to vigorously defend against all of Plaintiff's causes of action. Nevertheless, without admitting that Plaintiff and/or the putative class can recover any damages, when one considers the number of alleged Putative Class Members, the number of alleged violations of California law, and the four year liability period covered by the State Court Action, the aggregate amount in controversy presented by this case easily exceeds $5,000,000 for purposes of removal based on the following[2]:

24.     From August 5, 2016 to the present, Defendant employed, in the aggregate, approximately 233 current and former non-exempt employees in California. *See*

---

[2] Defendant provides the foregoing calculations solely to demonstrate that the amount in controversy in this case exceeds the jurisdictional minimum. Defendant makes no admission of any liability or damages with respect to any aspect of this case.

Mirabelli Decl. ¶ 6.  Substantially all of these employees were at all times regular, full-time employees.  *Id.*  These employees earned an average hourly rate of $20.41, based on their last reported hourly rate, and worked approximately 27,141.80 workweeks in total from August 5, 2016 to August 13, 2020.[3]  *See* Mirabelli Decl., ¶¶ 7-8.

### 1.   Alleged Failure to Pay Overtime (First Cause of Action) and Minimum Wages (Fourth Cause of Action)

25.   In the Complaint, Plaintiff alleges that he and the putative class are entitled to unpaid wages because Defendant "engaged in an ongoing and systematic scheme of wage abuse against their hourly paid or non-exempt employees . . . regularly requiring Plaintiff and the Class to work off the clock without compensation, thereby failing to pay them for all hours worked, including minimum and overtime wages." Exh. A (Complaint), ¶ 21.  Plaintiff further alleges that Defendant also implemented "…time rounding practices that resulted in the systematic underpayment of wages to Plaintiff and the Class, including minimum and overtime wages."  *Id.*

26.   Plaintiff also alleges that "Defendants routinely failed to relieve Plaintiff and the Class of all duties during their meal periods, regularly failed to relinquish control over Plaintiff and the Class during their meal periods, regularly failed to permit Plaintiff and the Class a reasonable opportunity to take their meal periods, and regularly impeded or discouraged Plaintiff and the Class from taking thirty (30) minute

---

[3] The Putative Class Members' hourly rates of pay vary.  *See* Mirabelli Decl., ¶ 7. During the applicable statute of limitations period, Putative Class Members include non-exempt employees with hourly rates of pay that ranged from approximately $15.00 to $37.93.  *Id.*  The average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation.  *See Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1147-48 (C.D. Cal. 2010) (approving use of average hourly rate of class members).  Moreover, as Plaintiff seeks to represent "[a]ll current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the certified class action is provided to the class" (*see* Exh. A (Complaint), ¶ 12, emph. added), these total number of employees and average hourly rate will only increase.

uninterrupted meal breaks no later than the end of their fifth hour of work and/or from taking a second thirty (30) minute uninterrupted meal break no later than their tenth hour of work for shifts lasting more than ten (10) hours." *Id.* at ¶ 22.  Plaintiff concludes that "Defendants' actual policy and practice was to schedule Plaintiff and the Class in a way the prohibited them from taking timely and duty-free meal periods, and to require Plaintiff and the Class to work through their meal periods, for which they were not compensated." *Id.* at ¶ 23.  California law currently applies a four-year statute of limitation to unfair competition claims based on alleged unpaid wage violations. *See* Cal. Bus. & Prof. Code § 17208.

27.  Although difficult to ascertain based on Plaintiff's bare-bone allegations, seemingly, Plaintiff contends that Defendant had a policy and practice of consistently (a) forcing and/or knowingly permitting employees to work off the clock; (b) forcing employees to clock out for thirty (30) minute meal periods even though they were required to perform work during unpaid meal periods; and (c) implementing an unlawful rounding policy.  *See* Exh. A (Complaint), ¶¶ 21-23.  Based on these allegations, it is reasonable to assume that Plaintiff purports that Defendant unlawfully deducted or otherwise failed to pay at least thirty (30) minutes of wages from each putative class member, per day (i.e., 2.5 hours per workweek).  The allegations further support the assumption that the 30 minutes of straight time that the Employee allegedly worked "off the clock" would have pushed the total number of hours worked by the employee to 8.5, with the additional 30 minutes constituting unpaid overtime pay.

28.  Under California Labor Code Section 1194, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage *or* overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.  Further, under California Labor Code section 1194.2, an employee receiving less than the minimum wage is entitled to recover liquidated

damages in an amount equal to the minimum wages unlawfully unpaid and interest thereon.

29.   ***Total Potential Unpaid Minimum/Overtime Wages and Liquidated Damages.***[4]   Excluding any bonus or commission payments in calculating the regular rate of pay, the average overtime rate for the Putative Class Members would be $30.62 per hour [$20.41 x 1.5].  Based upon Plaintiff's allegations, it is reasonable to assume that the unpaid wage amount in controversy is <u>at least</u> **$2,077,704.79** [$30.62 x 2.5 hours x 27,141.80 workweeks] pursuant to Labor Code section 1194 for "unpaid overtime." Additionally, based on these assumptions, the Putative Class Members would be entitled to liquidated damages in the amount of <u>at least</u> **$788,808.56** pursuant to Labor Code section 1194.3 [27,141.80 workweeks x (2.5 hours x $11.625[5])].

2.   <u>Alleged Meal and Rest Period Violations Claims (Second and Third Causes of Action)</u>.

30.   The Complaint further alleges that Defendant had a ". . . policy and practice [to] schedule Plaintiff and the Class in a way th[at] prohibited them from taking timely and duty-free meal periods, and to require Plaintiff and the Class to work through their meal periods, for which they were not compensated."  Exh. A (Complaint), ¶ 23. Plaintiff alleges that Defendant ". . . failed to pay Plaintiff and the Class premium wages for meal periods that were missed, late, interrupted, or shortened in violation of California law." *Id.* at ¶ 24.  Further, Plaintiff alleges that "Defendants knew or should have known that Plaintiff and the Class were entitled to receive all meal periods or

---

[4] California law generally entitles non-exempt employees to overtime compensation at 1.5 times the regular rate of pay for work in excess of 8 hours in one workday or 40 hours in one workweek. *See* Cal. Lab. Code §§ 510, 1194. Work in excess of 12 hours in a single work day must be compensated at 2.0 times an employee's regular pay rate. *Id.*

[5] Weighted average of California minimum wage rate between 2016 and 2020 for Companies with more than 25 employees.  This average does not factor in the minimum wage in local jurisdictions such as Log Angeles, which would make the average even higher.

payment of one additional hour of pay at their regular rate of pay when a meal period was missed, short, late, and/or interrupted." *Id.*  Additionally, Plaintiff claims that Defendant, "[n]otwithstanding this knowledge . . . routinely failed to provide legally compliant meal periods to Plaintiff and the Class, and routinely failed to pay one additional hour of pay to Plaintiff and the Class at their regular rate of pay when a meal period was missed, short, late, and/or interrupted." *Id.*

31.  Plaintiff also claims that "[t]hroughout the time period involved in this case, Defendants have implemented policies and practices which prohibited Plaintiff and the Class from taking timely and duty-free rest periods.  Defendants regularly failed to provide, authorize, and permit Plaintiff and the Class to take full, uninterrupted, off-duty rest periods for every shift lasting three and one-half (3.5) to six (6) hours and/or two full, uninterrupted, off-duty rest periods for every shift lasting six (6) to ten (10) hours, and failed to make a good faith effort to authorize, permit, and provide such rest breaks in the middle of each work period."  *Id.* at ¶ 25.

32.  Lastly, Plaintiff alleges that "Defendants systemically disregarded their own written policies regarding the provision and timing of rest periods for Plaintiff and the Class" and that "Defendants' actual policy and practice was to schedule Plaintiff and the Class in a way that regularly prohibited them from taking timely and duty free rest periods, and to regularly require Plaintiff and the Class to work through their rest periods."  *Id.* at ¶ 26.  Plaintiff seeks premium wages, interest and penalties, and attorneys' fees and costs in connection with her rest period claim.  *See id.* at ¶¶ 58, 67; Prayer for Damages ¶¶ 10-14.

33.  In California, employees are entitled to one hour of "premium pay" for each day during which a meal period violation occurs and one hour of "premium pay" for each day during which a rest period violation occurs.  *See* Cal. Lab. Code § 226.7(c).  Specifically, pursuant to the California Labor Code, "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with state law, . . . the employer shall pay the employee one additional hour of pay at the employee's regular

rate of compensation for each workday that the meal or rest or recovery period is not provided." *Id.*  A four-year statute of limitations applies to meal and rest period claims enforced under the California Unfair Competition Law, and Plaintiff has alleged meal and rest period claims under that law.  *See* Exh. A (Complaint), ¶ 176; *see also Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1114 (2007); Cal. Bus. & Prof. Code § 17208.  An employee may recover up to two premiums each workday – one for a missed meal period and another for a missed rest period.  *See UPS v. Superior Court*, 196 Cal. App. 4th 57, 69 (2011).

34.  ***Total Potential Liability For Missed Meal and Rest Period Compensation:*** Plaintiff alleges that Defendant had a practice and policy of prohibiting its employees from taking timely and duty free meal and rest periods and required them to work through their meal periods, did not compensate them for this time, and failed to pay them premium payments.  *See* Exh. A (Complaint), ¶¶ 23-26.  Based on the above allegations, an assumption of a 50% violation rate, i.e. five (5) premium payments total per week, per employee, for the duration of the statutory period is reasonable.[6]  Since August 5, 2016, Defendant's non-exempt employees have worked approximately 27,141.80 workweeks.  *See* Mirabelli Decl., ¶ 8.  As noted above, the Putative Class Members earned an average hourly rate of $20.41 per hour.  *Id.* at ¶ 7.  Accordingly, the amount in controversy for unpaid meal period and rest period premiums under California Labor Code Section 226.7 is conservatively estimated at **$2,769,820.69** [5 violations per week x $20.41 x 27,141.80 workweeks].

///

///

---

[6] Courts have upheld a 50% violation rate on both meal and rest period claims where plaintiffs alleged they and the class members "***sometimes*** did not receive all of their meal periods in a lawful fashion." *Oda v. Gucci Am., Inc*., No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. 2015) (emph. supplied).  Here, Plaintiff claims that Defendant "systemically" and "regularly" failed to provide compliant meal and rest periods.  *See* Exh. A (Complaint), ¶¶ 24, 26.

### 3.   Waiting Time Penalties Claim (Fifth Cause of Action).

35.   Plaintiff contends that Defendant "intentionally and willfully failed to pay Plaintiff and other Class Members who are no longer employed by Defendants all of their wages, earned and unpaid, including but not limited to minimum wages, straight time wages, and overtime wages, within seventy-two (72) hours of their leaving Defendants' employ."   Exh. A (Complaint), ¶77.   Plaintiff further contends that "Plaintiff and other Class Members who are no longer employed by Defendants are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." *Id.* at ¶ 80.   Effectively, Plaintiff alleges Defendant did not timely pay all wages owed at termination, and therefore waiting time penalties are calculated at a 100% violation rate.   Courts have applied this logic to waiting time claims.[7]   The statute of limitations for waiting time penalties under Labor Code § 203 is three years.   *See Pineda v. Bank of America*, N.A., 50 Cal. 4th 1389, 1401 (2010).

36.   ***Total Potential Liability For Waiting Time Penalties:*** From August 5, 2017 to the present, there were no less than 63 Putative Class Members whose employment was terminated within the applicable three-year statute of limitations. *See* Mirabelli Decl., ¶ 11. The average hourly rate of these employees at the time of

---

[7] In *Crummie v. CertifiedSafety, Inc.,* No. 17-CV-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. 2017), defendant assumed the statutory "full 30 day maximum penalty available" on plaintiff's waiting time claim given the allegation that the class was "owed (and are still owed)" pay for overtime and missed meal and rest breaks.  The court found it "completely reasonable" for the defendant to assume the maximum, 30-day period of waiting time penalties where the allegations regarding unpaid wages supported the assumption. *Id.*; *see also Marentes v. Key Energy Servs. Cal, Inc*., No. L13-CV-02067 AWI, 2015 WL 756516, at *9 (E.D. Cal. 2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the putative class members."); *Altamirano v. Shaw Indus., Inc*., No. C-13-0939 EMC, 2013 WL 2950600, at *12 (N.D. Cal. 2013) ("[A]s there is nothing in the complaint or the record to suggest that Defendants paid employees these unpaid wages at some point during the month after they separated from employment, awarding penalties for the entire 30 day pay period is reasonable").

termination was $18.45.  *Id.*  Accordingly, the amount in controversy for Plaintiff's waiting time penalties is estimated to be **$278,964** [$18.45 x 8 hours/day x 30 days x 63 former employees].

              4.    <u>Itemized Wage Statement Penalties (Sixth Cause of Action)</u>.

37.    Plaintiff also seeks recovery based on Defendant's alleged failure to provide accurate itemized wage statements.  *See* Exh. A (Complaint), ¶¶ 82-87. Plaintiff alleges that Defendant "intentionally and willfully failed to provide Plaintiff and the Class members with complete and accurate wage statements . . . ." *Id.* ¶ 83. The Labor Code provides for recovery of "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e).  A one year statute of limitations applies to a violation of § 226(a).  *See Blackwell v. SkyWest Airlines, Inc.* 245 F.R.D. 453, 462 (S.D. Cal. 2007); Civ. Proc. Code § 340.

38.    ***Total Potential Liability For Wage Statement Penalties:*** Since at least August 5, 2019, Defendant paid Plaintiff and the Putative Class Members on a biweekly basis.  *See* Mirabelli Decl., ¶ 10.  There were approximately 170 Putative Class Members employed during the 26 pay periods between August 5, 2019 and August 5, 2020. *Id.* at ¶ 11.  Thus, under Plaintiff's theory, the amount in controversy is **$433,500** [(170 employees x $50) + (170 employees x 25 pay periods x $100) in penalties.

              5.    <u>Failure to Reimburse Expenses (Seventh Cause of Action)</u>.

39.    By way of his seventh cause of action, Plaintiff alleges that he and the Class incurred "business-related expenses and costs that were not fully reimbursed by Defendants." Exh. A (Complaint), ¶ 90.  As a result, Plaintiff alleges that "Plaintiff and the Class are entitled to recover from Defendants their business-related expenses and costs incurred during the course and scope of their employment, plus interest accrued

from the date on which the employee incurred the necessary expenditures . . . ."  (*Id.* at ¶ 91.)

40.    Plaintiff provides no information as to what these "business-related expenses" may be, other than that they include, but are not limited, to "the us[e] . . . of personal cell phones and vehicles for work-related duties."  Accordingly, Defendant conservatively estimates that, at a minimum, Plaintiff is seeking $300 (but likely more) for unpaid business expenses for every year worked by each employee (which equates to $25 per month).

41.    ***Total Potential Liability for Unreimbursed Business-Expenses.***  Labor Code Sections 2800 and 2802 has a three year statute of limitations, but is expanded to four years by way of Plaintiff's California Unfair Competition Law claim.  *See* Exh. A (Complaint), ¶¶ 96-99.  During the statutory period there were at least 233 Putative Class Members employed.  Within the statutory period, the Putative Class Members worked a total of 27,141.80 workweeks or approximately a collective 521.96 years [27,141.80 workweeks/52].  Accordingly, the amount in controversy for unreimbursed business-expenses can be reasonably estimated to be *at least* **$156,588.00** [521.96 years x $300].

### 6.    Attorney's Fees.

42.    In addition, Plaintiff seeks attorneys' fees and compensatory and special damages, which have not been included in the above calculations.  *See* Exh. A (Complaint), Prayer for Relief, ¶¶ 8, 15, 27, 42 and 47.  Plaintiff's potential attorneys' fee awards can properly be included in calculating the amount in controversy, and such awards are commonly in the 25% to 33% range of an award to the class.  *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that attorneys' fees may be included when calculating the amount in controversy).  The Ninth Circuit has concluded that reasonable attorneys' fees in such circumstances must be considered.  "We conclude … that a court ***must include future attorneys' fees recoverable by statute*** or contract when assessing ***whether the amount-in-controversy requirement is met***. …

[W]hen we assess the amount in controversy at the time of removal, we must include all relief to which a plaintiff is entitled if the action succeeds. Accordingly, *if the law entitles the plaintiff to future attorneys' fees if the action succeeds*, '*then there is no question that future* [*attorneys' fees*] *are* '*at stake*' *in the litigation*,' and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v. Swift Trans. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (emph added; int. citations omitted). "Indeed, the Ninth Circuit clarified that future attorneys' fees must be included in determining the amount in controversy where such fees are allowed to a prevailing party by law. *Id*. at 794. Here, an award of attorneys' fees is permitted for Plaintiffs' claims. *See, e.g.*, Cal. Labor Code §§ 218.5, 1194; *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1179 (2002) (holding that attorneys' fees are available under UCL). Therefore, the Court should consider the amount of attorneys' fees Plaintiff is likely to claim at the conclusion of the litigation as part of the amount in controversy.

43. Likely attorneys' fees can be assessed by reference to similar cases. *See*, *Kroske v. U.S. Bank Corp*., 432 F.3d 976, 980 (9th Cir. 2005) (finding district court properly considered damage award in similar case); *Beaver v. NPC Intern, Inc.,* 451 F. Supp. 2d 1196, 1198 (D. Or. 2006) ("This court and others have sanctioned the introduction of decisions and awards in similar cases as evidence of the amount in controversy"); *see also, In re Volkswagen*, 2019 WL 1501577, *5-6 (N.D. Cal. Apr. 5, 2019) ("To determine the amount of attorneys' fees at stake, the removing party can provide an 'estimate[ ] [of] the amount of time that the case will require,' and an estimate of 'plaintiff's counsel's hourly billing rate'"). Given the challenges to class action litigation and the high billable rates in California with protracted litigation, Courts regularly award attorneys' fees in the millions of dollars in California class actions. *See, e.g., Benson v. Kwikset Corp.,* 152 Cal. App. 4th 1254, 1276–77 (2007) (the court awarded nearly $3 million in attorneys' fees).

44.     Although the statutory damages demonstrate that the amount in controversy will exceed $5 million, even a comparatively low recovery of damages will exceed the jurisdictional amount when added to the likely attorneys' fees at issue.

45.     While Defendant denies liability and Plaintiff's entitlement to any award, including attorney's fees, for purposes of removal, it is evident that attorney's fees and costs as alleged in the Complaint will readily add at least another 25% of the estimated damages recovery or more to the total amount in controversy, thus providing further evidence that the amount well exceeds the jurisdictional minimum.  *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65, n.11 (2008) ("[S]tudies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery").  When "determining whether the amount in controversy exceeds the jurisdictional threshold…courts have used the 25% benchmark."  *Rodriguez v. Cleansource, Inc.*, 2014 U.S. Dist. LEXIS 106901, *13 (S.D. Cal. Aug. 4, 2014).  As set forth the above, the amount in controversy (excluding attorneys' fees) exceeds $6,505,386.04.  Using the widely-accepted 25% benchmark, the estimated attorneys' fees at issue are **$1,626,346.51**.

### Aggregate Potential Damages Including Attorneys' Fees.

| AMOUNT IN CONTROVERSY | |
| --- | --- |
| **Category of Damages** | **Amount** |
| Unpaid Overtime through August 5, 2020 | $ 2,077,704.79 |
| Liquidated Damages | $ 788,808.56 |
| Meal and Rest Period Premium Penalties | $ 2,769,820.69 |
| Wage Statement Penalties | $ 433,500 |
| Waiting Time Penalties | $ 278,964 |
| Unreimbursed Expenses | $ 156,588.00 |
| Attorney's Fees Estimation (25% of Damages) | $ 1,626,346.51 |
| **TOTAL** | **$ 8,131,732.55** |

DEFENDANT STERIGENICS U.S., LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446
74575803.4

## IV.    TIMELINESS OF REMOVAL

46.    This action has not previously been removed to federal court.

47.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based."  Defendant has filed this Notice of Removal within 30 days of August 12, 2020, the date on which Plaintiff served Defendant, through its registered agent for service of process, with the Complaint.  Accordingly, this action is being removed within 30 days of the first date upon which Defendant was served with any paper giving it knowledge that the action was indeed removable.

## V.    NOTICE TO PLAINTIFF

48.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Clerk of the Superior Court of the State of California, County of San Diego.

**WHEREFORE**, for all of the foregoing reasons, Defendant hereby removes the State Court Action now pending in the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

Dated:  September 11, 2020

POLSINELLI LLP

By: _____

Lindsay Ryan
Alex Polishuk

Attorneys for Defendant
STERIGENICS U.S., LLC

DEFENDANT STERIGENICS U.S., LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446
74575803.4

1

## PROOF OF SERVICE

2      I, Li-Ling Yeh, declare as follows:

3      I am employed in Los Angeles County, Los Angeles, California.  I am over the age
of eighteen years and not a party to this action.  My business address is 2049 Century Park East,
4  Suite 2900, Los Angeles, California 90067.  On September 11, 2020, I served the within:

5  **DEFENDANT STERIGENICS U.S., LLC'S  NOTICE OF REMOVAL OF
CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332,
6  1441, AND 1446**

7  on the interested parties in this action addressed as follows:

8              Heather Davis
            Amir Nayebdadash
9            PROTECTION LAW GROUP, LLP
            136 Main Street, Suite A
10           El Segundo, CA 90245
            Tel: (424)290-3095
11           Fax: (866)264-7880
            heather@protectionlawgroup.com
12           amir@protectionlawgroup.com
            **Attorneys for Plaintiff Alexander Vallejo**
13

14

15  ☒        **(BY MAIL)** By placing such document(s) in a sealed envelope, with postage
            thereon fully prepaid for first class mail, for collection and mailing at Polsinelli
16           LLP following ordinary business practice. I am readily familiar with the practice at
            Polsinelli LLP for collection and processing of correspondence for mailing with
17           the United States Postal Service, said practice being that in the ordinary course of
            business, correspondence is deposited in the United States Postal Service the same
18           day as it is placed for collection.

19
20  ☐        **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope,
            for collection and overnight mailing at Polsinelli LLP following ordinary business
21           practice. I am readily familiar with the practice at Polsinelli LLP for collection and
            processing of overnight service mailing, said practice being that in the ordinary
22           course of business, correspondence is deposited with the overnight messenger
            service, Federal Express, for delivery as addressed.

23
24  ☐        **(BY ELECTRONIC MAIL)** By transmitting such document(s) electronically
            from my e-mail address, lyeh@polsinelli.com at Polsinelli LLP, to the person(s) at
            the electronic mail addresses listed above.
25

26

27

28

73053308.1

1        I declare under penalty of perjury under the laws of the State of California that the
2   foregoing is true and correct and that this declaration was executed on September 11, 2020, at
    Los Angeles, California.

3

4   _____

5                        Li-Ling Yeh

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

73053308.1