UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER VALLEJO, individually and on behalf of others similarly situated,<br>Plaintiff,<br>v.<br>STERIGENICS U.S., LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,<br>Defendant. | Case No.: 3:20-cv-01788-AJB-AHG<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION TO REMAND, (Doc. No. 9); AND**<br><br>**(2) GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE THE COMPLAINT WITH LEAVE TO AMEND, (Doc. No. 4)** |

This is a putative wage and hour class action under the California Labor Code. Before the Court are two motions. Plaintiff Alexander Vallejo ("Plaintiff") seeks for the Court to remand the action to state court, arguing that Defendant Sterigenics U.S., LLC ("Defendant") failed to satisfy the amount-in-controversy requirement of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d). Defendant opposed the motion to remand. (Doc. No. 13.) In addition, Defendant filed a motion to dismiss and/or strike the Complaint. (Doc. No. 4.) The motion to dismiss and/or strike is opposed by Plaintiff. (Doc. No. 8.) Because the Court finds the amount-in-controversy requirement is met, the Court **DENIES** Plaintiff's motion to remand. As for the motion to dismiss and/or strike, the Court **GRANTS** Defendant's motion, but provides for **LEAVE TO AMEND**.

## I. BACKGROUND

Defendant is in the hazardous waste service industry, providing sterilization solutions. (Doc. No. 1-3 ¶ 16.) Defendant employed Plaintiff as an hourly-paid, non-exempt Machine Operator from approximately January 2012 through January 2018. (*See id.* ¶ 17.) Plaintiff originally filed the action in San Diego Superior Court, as Case No. 37-2020-00027438-CU-OE-CTL. (*Id.*) The lawsuit was brought on behalf of "[a]ll current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of the complaint up until the time that notice of the certified class action is provided to the class." (*Id.* ¶ 12.) Plaintiff asserts eight causes of action against Defendant: (1) failure to pay overtime (Cal. Lab. Code §§ 510, 1198); (2) unpaid meal period premiums (Cal. Lab. Code §§ 226.7, 512, subd. (a)); (3) unpaid rest period premiums (Cal Lab. Code § 226.7); (4) unpaid minimum wage violations (Cal. Lab. Code §§ 1194, 1197, 1197.1); (5) waiting time penalties (Cal. Lab. Code §§ 201–203); (6) itemized wage statement penalties (Cal Lab. Code § 226, subd. (a)); (7) failure to reimburse expenses (Cal. Lab. Code §§ 2800, 2802); and (8) violation of California Business and Professions Code § 17200. (Doc No. 1–3.) On September 11, 2020, Defendant timely removed the action. (Doc. No. 1.) Plaintiff filed the instant motion alleging the Complaint fails to meet the minimum amount-in-controversy necessary for jurisdiction under CAFA. Defendant also filed a motion to dismiss and/or strike the Complaint. This order follows.

## II. PLAINTIFF'S MOTION TO REMAND

### A. Legal Standard

CAFA gives federal courts jurisdiction over certain class actions if the class has at least 100 members, the parties are minimally diverse, and the amount-in-controversy exceeds $5 million. *See* U.S.C. §1332(d)(2), (5)(B); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Plaintiff only challenges the amount-in-controversy element. As such, the Court will only address that issue.

A class action that meets CAFA standards may be removed to federal court. 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). In fact, Congress intended CAFA jurisdiction to be "interpreted expansively." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Under CAFA, the burden of establishing removal jurisdiction rests on the removing party. *See Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citing *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006)). A removing defendant need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, and the defendant's amount in controversy allegation should be accepted if not contested by the plaintiff or questioned by the court. *See Dart Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014). If, however, "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)); *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). Under the preponderance of the evidence standard, a defendant must establish "that the potential damage could exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)).

A defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and need not contain evidentiary submissions. *Owens*, 135 S.Ct. at 554. Where, as here, a complaint does not specify the damages sought, the defendant must prove it is more likely than not the amount in controversy exceeds $5,000,000. *Coleman v. Estes Express Lines, Inc.* 730 F. Supp. 2d 1141, 1148 (2010). A defendant is not obligated to research, state, and prove a plaintiff's damages, but the defendant must use facts to support its allegation. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

3

**B. Discussion**

The parties dispute the "amount in controversy" element of CAFA jurisdiction. While Plaintiff asserts that the amount in controversy is less than five million dollars, Defendant contends that the amount in controversy for CAFA jurisdiction is at least $7,731,414.41, broken down as follows:

| | |
|---|---|
| Meal Period & Rest Period Premiums: | $2,769,820.69 |
| Unpaid Overtime (through Aug. 5, 2020): | $2,057,704.79 |
| Liquidated Damages: | $788,808.56 |
| Wage Statement Penalties: | $433,500.00 |
| Waiting Time Penalties: | $278,964.00 |
| Unreimbursed Business Expenses: | $156,588.00 |
| Injunctive Relief: | Not included |
| **Sub-Total:** | **$6,485,386.04** |
| Attorneys' Fees (25%) | $1,246,028.37 |
| **TOTAL:** | **$7,731,414.41** |

(Doc. No. 13 at 25.)

### 1. Plaintiff's Meal and Rest Break Claims (Second and Third Causes of Action)

In order to determine whether Defendant has shown that the Court has CAFA jurisdiction, the Court will need to review the amount in controversy for each of Plaintiff's claims. The Court first turns to the amount in controversy calculations regarding Plaintiff's meal and rest break claims. Defendant argues that the amount in controversy of Plaintiff's meal and rest break claims are approximately $2,769,820.69. (*Id.*) California Labor Code § 226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period." The penalty for violation of section 226.7(b) is "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7(c).

4

"Every employer shall authorize and permit all employees after a work period of not more than five (5) hours to take a meal period of not less than thirty (30) minutes." Cal. Code Regs. tit. 8, § 11140.

In the Complaint, Plaintiff demands "one (1) hour of pay at each employee's regular rate of compensation for each workday that a meal [and rest] period was not provided." (Doc. No. 1-3 ¶ 11, 18.) Plaintiff alleges, "Defendant routinely failed to provide legally compliant meal periods to Plaintiff and the Class at their regular rate of pay when a meal period was missed, short, late, and/or interrupted." (*Id.* ¶ 24.) As for rest breaks, Plaintiff asserts "Defendants have implemented policies and practices which prohibited Plaintiff and the Class from taking timely and duty-free rest periods." (*Id.* ¶ 25.) The Complaint details, "Defendants systematically disregarded their own written policies regarding the provision and timing of rest periods for Plaintiff and the Class." (*Id.* ¶ 26.)

The Complaint does not specify the damage amount sought for these violations. (*Id.*) In the Notice of Removal, Defendant asserts that the proper amount for these violations is $2,769,820.69. (*Id.* ¶ 34.) To determine this total, Defendant multiplied: the number of violations per week (five premium[1] payments total per week, per employee (5)); the average hourly payrate of class members ($20.41); and the number of workweeks in the statutory period[2] (27,141.80). (*Id.*) Defendant and Plaintiff do not dispute the duration of the statutory period or the average hourly pay rate of the class members. Rather, Plaintiff asserts Defendant's use of a 50% violation rate i.e., five premium payments total per week, per employee, is unsubstantiated by evidence. Defendant responds Plaintiff's "allegations alone are sufficient to support a 100% violation rate for meal and rest break claims," and that application of a 50% violation rate is "not only reasonable, but conservative in light of

---

[1] In California, employees are entitled to one hour of "premium pay" for each day during which a meal period violation occurs and one hour of "premium pay" for each day during which a rest period violation occurs. *See* Cal. Lab. Code § 226.7(c).

[2] The putative class members were collectively employed for a total of approximately 27,141.80 workweeks between August 5, 2016 and August 13, 2020. (Doc. No. 1-2 ¶ 8.)

5

Plaintiff's broad allegations." (Doc. No. 13 at 10.) Plaintiff disagrees, arguing it would be more reasonable to accept that every putative class member experienced one meal period and one rest period violation every workweek (instead of five as Defendant argues). Using Plaintiff's numbers, the amount in controversy for unpaid meal period and rest period premiums would be $1,107,928.28.

In determining the appropriate violation rate, the Court looks first to the allegations in the Complaint. *See Ibarra*, 775 F.3d at 1197. A removing defendant "must inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove plaintiff's case for him by proving the actual rates of violation." *Feao v. UFP Riverside, LLC*, No. CV173080PSGJPRX, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (citations omitted). Here, the Complaint offered no guidance as to the frequency of the alleged violations, only that Defendant had "a policy and practice" of "regular" and "routine" meal and rest period violations. Consequently, in its Notice of Removal, Defendant assumed a 50% violation rate, i.e., five premium payments total per week, per employee, for the duration of the statutory period. Based on the Complaint's broad allegations that Defendant had "a policy and practice" of meal and rest period violations, a 50% violation rate is reasonable and does not significantly depart from rates other courts have found sensible under similar circumstances. *See Alvarez v. Office Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding reasonable a 60 percent violation rate for claims relating to missed meal and rest periods when the complaint is indeterminate with respect to violation rates); *Feao*, 2017 WL 2836207, at *5 (similar); *Stanley v. Distribution Alternatives, Inc.*, No. EDCV172173AGKKX, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding appropriate assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offers no guidance as to the frequency of these violations).

In sum, Defendant's calculations as to the potential meal and rest period violations are thus based on actual employee data which shows that there are approximately 233

putative class members, and that each putative class member would have been eligible for meal periods and rest periods based on their regular schedule. Accordingly, Defendant's assumptions are appropriate, and Defendant has proven the meal and rest break premium amounts in Plaintiff's meal and rest break claims are approximately $2,769,820.69 by a preponderance of the evidence.

### 2. Plaintiff's Overtime and Minimum Wage Claims (First and Fourth Causes of Action)

Defendant argues that the damages at issue with regard to Plaintiff's overtime and minimum wage claims is around $2,057,704.79. (Doc. No. 13 at 25.) California Labor Code § 1194 provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon[.]" As to the first claim for relief, Plaintiff contends, "Defendant intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other Class Members." (Doc. No. 1-3 ¶ 47.) Plaintiff seeks, "unpaid overtime compensation, as well as interests, costs, and attorneys' fees." (Doc. No. 1–3 ¶ 49.) As to the fourth claim, Plaintiff asserts, "Defendant regularly failed to pay minimum wage to Plaintiff and the other Class Members as required pursuant to California Labor Code sections 1194, 1197, and 1197.1." (*Id.* ¶ 72.)

Plaintiff contends that the $2,057,704.79 amount for these claims is exorbitant. Defendant's estimation is calculated as 27,141.80 workweeks x $30.62 (1.5 x $20.41 hourly rate) x 2.5 hours of off-the-clock work per workweek. At issue between the parties is the assumption that each employee worked at least 2.5 hours of unpaid overtime per week. Plaintiff advocates that it would be more reasonable to accept that putative class members experienced one hour of unpaid overtime work for every workweek. (Doc. No. 9 at 23.) Defendants respond that 2.5 hours of unpaid overtime is appropriate because Plaintiff's allegations reflect three different theories of liability: (1) unpaid overtime based on off-the-clock work; (2) unpaid overtime based on employees working through thirty

7

minute meal periods while clocked out; and (3) unpaid overtime based on unlawful rounding. (Doc. No. 13 at 17.)

Looking towards the language of the Complaint, Plaintiff alleges that Defendant "regularly" failed to pay all overtime compensation and at least a minimum wage owed to Plaintiff and the class when they worked in excess of eight hours in a single work day and/or forty hours in a single work week. (Doc. No. 1-3 ¶ 31, 33.) But Defendant has not established, by a preponderance of the evidence, that the metric of 2.5 hours of unpaid overtime is a reasonable assumption. Defendant argues that it is not obligated to "extensively comb through its business records at this early stage to try and prove Plaintiff's case for him." (Doc. No. 13 at 13.) While this is true, Defendant must nevertheless base their calculations on reasonable assumptions. Defendant's reliance on the term "regularly" and Plaintiff's multiple theories of liability points to no more in support of its contention. Without further support, the Court is in agreement with Plaintiff, and other courts, that one hour of unpaid overtime per week is a more proper assumption based on the Complaint's reference to the "regular" violation of overtime and minimum wage laws. *See, e.g., Smith v. Brinker Int'l, Inc.*, 2010 WL 1838726, at *4 (N.D. Cal. May 5, 2010) ("Defendants have failed to provide any evidence relating to either plaintiff's actual earnings or number of hours worked, asking the court to assume that each plaintiff worked an additional 2.5 hours each day in order to reach the amount-in-controversy threshold"); *Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019 MMM (MRWx), 2015 WL 10709682 (C.D. Cal. Sep. 28, 2015) (one hour of unpaid overtime per week "reasonable" based on plaintiffs' allegations that defendant "regularly" miscalculated overtime); *see also Garza v. Brinderson Constructors, Inc.*, No. 15-CV-02661-RMW, 2016 WL 1298390, at *3 (N.D. Cal. Apr. 4, 2016) (defendant's "assumption of one violation per week is reasonable based on the allegations of the SAC" that defendant regularly failed to provide rest breaks and had a "pattern and practice" of failing to provide those breaks). As such, $831,081.92 (27,141.80 workweeks x $30.62 [1.5 x $20.41] x 1 hour [of off-the-clock work per workweek]) is a more appropriate amount in controversy.

Moreover, because Plaintiff additionally seeks liquidated damages on the minimum wage claim, this amount should also factor into the amount in controversy analysis. *See* Cal. Labor Code § 1194.2(a) ("[A]n employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."); *Graham v. IFCO Systems N.A., Inc.*, 2017 WL 1243498, at *8 (C.D. Cal. Mar. 3, 2017) (considering liquidated damages part of the amount in controversy). At the very minimum, the Court calculates liquidated damages as $315,523.43 (calculated as 27,141.80 workweeks x 1 hour per week of unpaid wages x $11.625[3]).

### 3. Wage Statement Penalties

Plaintiff seeks recovery based on Defendant's alleged failure to provide accurate itemized wage statements. (Doc. No. 1-3 ¶¶ 82–87. Defendant estimates that the amount in controversy for non-compliant wage statements is $433,500.00 as "there were approximately 170 Putative Class Members employed during the twenty-six (26) pay periods between August 5, 2019 and August 5, 2020." (Doc. No. 1-3 ¶ 38.) Plaintiff concedes that the claims for non-compliant wage statements are barred by the one-year statute of limitations, and agrees to withdraw these claims as Plaintiff "never was entitled to recover that amount" thus "the suit cannot involve the necessary amount" for removal. (Doc. No. 9 at 31.)

But Plaintiff is incorrect because "[t]he amount of controversy is tested at the time of removal, not as increased or decreased due to later events." *Killion v. AutoZone Stores Inc.*, 2011 WL 590292 (C.D. Cal. Feb. 8, 2011) (disregarding later statute of limitation arguments for amount in controversy purposes); *Ellison v. Autozone, Inc.*, 2012 WL 5177478 (9th Cir. 2012) ("Where, as here, jurisdiction was proper at the time of removal, subsequent dismissal or transfer of class claims does not defeat the court's CAFA

---

[3] The Court draws this amount from Defendant's Notice of Removal, which estimated the weighted average of California minimum wage rate between 2016 and 2020 for companies with more than 25 employees. (Doc. No. 1 at 11 n.5.)

9

jurisdiction over remaining individual claims."). Thus, Plaintiff may not unilaterally decide to dismiss the claim at this stage in the hopes of reducing the amount in controversy. Because Plaintiff does not otherwise dispute the reasonableness of the amount in damages for the wage statement claims, the Court finds that Defendant's estimate of $433,500.00 proper for the instant motion.[4]

### 4. Plaintiff's Waiting Time Penalties Claim

Plaintiff contends that Defendant "intentionally and willfully failed to pay Plaintiff and other Class Members who are no longer employed by Defendants all of their wages, earned and unpaid, including but not limited to minimum wages, straight time wages, and overtime wages, within seventy-two (72) hours of their leaving Defendants' employ." (Doc. No. 1-3 ¶ 77.) An employer's failure to timely pay wages owed pursuant to California Labor Code §§ 201 or 202 results in a penalty of the employee's wages for every day that it is late, up to a maximum of thirty days' wages. *See* Cal. Labor Code § 203.

Defendant approximates that the amount in controversy for waiting time penalties for failure to timely pay final wages should be calculated at a 100% violation rate for a total of $278,964.00 (63 former employees that were terminated within the class period x $18.45 average hourly rate x 8 hours/day x 30 days of waiting time). Plaintiff takes issue with the 100% violation rate, arguing Defendant's calculation is entirely speculative. (Doc. No. 9 at 26.) However, as discussed above, the Court has concluded that Defendant adequately supports violations of the California Labor Code for at least one hour of unpaid overtime per five-day work period, as well as at least five unpaid rest and one unpaid meal break. These reasonably assumed violations would support the waiting time penalties in the amount Defendant calculates.

---

[4] The California Labor Code provides for recovery of "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e). Defendant calculates $433,500.00 in damages by (170 employees x $50) + (170 employees x 25 pay periods x $100).

Other district courts have likewise concluded that allegations of the willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations) were sufficient to support estimations of waiting time penalties at a 100% rate. *See, e.g., Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint. . . . Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum."). Plaintiff does not offer any alternative calculation for waiting time penalties. While the burden of proof rests with Defendant, "if [the] defendant's asserted amount in controversy is challenged, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Ibarra*, 775 F.3d at 1197. Plaintiff has not rebutted Defendant's evidence nor has Plaintiff provided any evidence to suggest that the payments were ever provided. Thus, Defendant's estimate of $278,964.00 in waiting time penalties is proper.

### 5. Plaintiff's Unreimbursed Business Expenses Claim

Plaintiff argues that Defendant's calculation of $156,588.00 in unreimbursed business expenses is arbitrary and speculative. (Doc. No. 9 at 27.) Plaintiff's claim for unreimbursed business expenses alleges that, "[t]hroughout the time period . . . Defendants failed to reimburse Plaintiff and the Class for all necessary business-related expenses, including but not limited to the us[e] of their personal cell phones and vehicles for work-related duties." (Doc. No. 1-3 ¶ 38.) The contention that Defendant's calculations are unsupported is wrong. Notwithstanding the Complaint's inclusion of other unreimbursed business expenses, Defendant made assumptions based on only the allegation of unreimbursed cell phone bills. Defendant assumed that each employee incurred cell phone expenses of $25 per month, or $300 per year. Based on the total putative class size of 233 employees and the total workweeks of 27,141.80, Defendant calculated the amount-in-controversy to be about $156,588 for unreimbursed business expenses. This amount is not

11

unreasonable and is supported by a preponderance of the evidence given that the Complaint alleges other expenses owed.

### 6. Attorney's Fees

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met. The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 788, 794 (9th Cir. 2018). Plaintiff seeks reasonable attorneys' fees pursuant to his first (overtime), second (meal periods), fourth (minimum wages), seventh (business expenses), and eight (unfair competition) claims for relief. Here, Defendant asks the Court to use the percentage-of-recovery method to calculate the attorneys' fees in controversy at the rate of 25%. This amounts to $1,246,028.37. Defendant applies attorneys' fees only to the following causes of action: (1) meal and rest periods; (2) overtime; and (3) business expenses.

Here, Defendant does not submit evidence to justify the proposed 25% rate for attorneys' fees in controversy. Rather, it argues that the 25% rate constitutes a reasonable assumption of attorneys' fees based on Ninth Circuit precedent as a matter of law. However, the Ninth Circuit has rejected calculation of attorneys' fees in controversy for purposes of CAFA at a 25% rate as a matter of law, and held instead that "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence," noting that courts "may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Fritsch*, 899 F.3d at 796 (emphasis added). Although Defendant provides very little to support a 25% fee calculation, the Court can rely on its "own knowledge of customary rates and [its] experience concerning reasonable and proper fees." *Id.* at 795 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)). In the Court's experience, Plaintiff brings a typical California wage and hour case in which courts in this Circuit would likely apply

the 25% benchmark rate.[5] *See Cortez v. United Nat. Foods, Inc.*, No. 18-CV-04603-BLF, 2019 WL 955001, at *7 (N.D. Cal. Feb. 27, 2019) (citing several other wage and hour cases using the 25% benchmark). Accordingly, the Court will apply a 25% benchmark to Plaintiff's (1) meal and rest periods; (2) overtime; and (3) business expenses claims. The calculation will be 25% of the potentially recoverable amount of $3,757,490.61 ($2,769,820.69 (meal and rest claims) + $831,081.92 (unpaid overtime claims) + $156,588.00 (business expenses claim)). Thus, the Court will use the amount of $939,372.65 as attorneys' fees.

### 7. Conclusion

Based on all the reasons provided above, the Court calculates the amount in controversy as follows:

| | |
|---|---|
| Meal Period & Rest Period Premiums: | $2,769,820.69 |
| Unpaid Overtime (through Aug. 5, 2020): | $831,081.92 |
| Liquidated Damages: | $315,523.43 |
| Wage Statement Penalties: | $433,500.00 |
| Waiting Time Penalties: | $278,964.00 |
| Unreimbursed Business Expenses: | $156,588.00 |
| Injunctive Relief: | Not included |
| **Sub-Total:** | **$4,785,478.04** |
| Attorneys' Fees (25%) | $939,372.65 |
| **TOTAL:** | **$5,724,850.69** |

---

[5] The Court notes, however, that notwithstanding the Court's determination today, nothing in this order is to be construed as a guarantee that Plaintiff will be able to recover attorneys' fees at a 25% rate.

As demonstrated, Defendant has proved, by a preponderance of the evidence, that the amount in controversy exceeds 5 million dollars. Therefore, Plaintiff's motion to remand is **DENIED**.

### III. DEFENDANT'S MOTION TO DISMISS

Having found that the Court has CAFA jurisdiction over this instant action, the Court will turn to Defendant's motion to dismiss and/or strike the Complaint.

#### A. Legal Standard

A motion to dismiss should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Allegations in the complaint are only entitled to the presumption of truth if they contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Detailed factual allegations are not required, but factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

"A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks omitted). Establishing a complaint's plausibility is a "context-specific" endeavor that requires courts to "draw on . . . judicial experience and common sense." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

#### B. Discussion

##### 1. Sufficiency of the Complaint

Defendants request dismissal of Plaintiff's entire Complaint based on the failure to

allege sufficient facts under Rule 12(b)(6). Defendant contends that besides the dates of Plaintiff's employment, his position title, and the fact that he was an hourly-paid, non-exempt employee, no factual support exists in the Complaint. (*See* Doc. No.1-3 ¶¶ 17–18.) In reply, Plaintiff argues that it has provided adequate factual support by pointing to the very allegations Defendant contends to be threadbare.

Plaintiff fails to meet the minimum pleading requirements for each of the claims he asserts. In each claim, Plaintiff follows the same pattern of stating various obligations California law imposes upon employers, and providing a legal conclusion that Defendant violated those laws. As one example relevant to Plaintiff's overtime claim, Plaintiff starts by stating, "California Labor Code section 510 codifies the right to overtime compensation at one-and-one-half times the regular hourly rate for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh day of work. . . ." (Doc. No. 1-3 ¶ 45.) Then, Plaintiff alleges "[d]uring the relevant time period, Plaintiff and the other Class Members regularly worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week." (*Id.* ¶ 46.) That claim is followed by the allegation that, "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other Class Members." (*Id.* ¶ 47.) Then finally, Plaintiff concludes "Defendants' failure to pay Plaintiff and the other Class Members the unpaid balance of overtime compensation, as required by California laws, violates the provisions of California Labor Code sections 510 and 1198, and is therefore unlawful." (*Id.* ¶ 48.)

"Although plaintiffs in these types of cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), as amended (Jan. 26, 2015). In the employment class action context, courts have also repeatedly rejected similar allegations that simply "recite[] the statutory language setting forth the elements of the claim, and then

slavishly repeat[] the statutory language as to the purported factual allegations." *Deleon v. Time Warner Cable LLC*, No. CV 09-2438 AG RNBX, 2009 WL 9426145, at *3 (C.D. Cal. July 17, 2009); *Weigele v. FedEx Ground Package Sys.*, No. 06–CV–1330 JLS (POR), 2010 WL 4723673 (S.D. Cal. Nov. 15, 2010) (dismissing complaint alleging that "Defendant required the Plaintiffs to work overtime without lawful compensation" and that "Defendant required Plaintiffs to work . . . without being given a 30–minute meal period for shifts of at least five hours and second 30–minute meal periods for shifts of at least ten hours . . . ."); *Anderson v. Blockbuster Inc.*, No. 2:10–cv–00158–MCE–GGH, 2010 WL 1797249 (E.D. Cal. May 4, 2010) (dismissing complaint alleging that "Plaintiff and class members consistently worked in excess of eight hours in a day, in excess of 12 hours in a day and/or in excess of 40 hours in a week.").

In light of these deficiencies, the Court dismisses the Complaint **WITH LEAVE TO AMEND**.

### 2. Plaintiff's Sixth Claim for Relief is Time-Barred

Defendant argues Plaintiff's sixth cause of action improperly seeks time-barred statutory penalties. (Doc. No. 4 at 19.) Claims seeking statutory penalties have a one-year statute of limitations. *See* Cal. Code Civ. Proc. § 340(a). Here, Plaintiff is requesting "the greater of [his] actual damages . . . or an aggregate penalty not exceeding four thousand dollars" pursuant to Section 226(e). (Doc. No. 1-3 ¶ 86.) Plaintiff does not dispute the untimeliness of his claim, and in fact concedes that his claim is time-barred in his motion to remand. (Doc. No. 9 at 9 n.1 ("Upon further review of the Complaint and applicable statute of limitations, Plaintiff agrees to dismiss his sixth cause of action (violation of Labor Code § 226(a)), without prejudice, as this claim is subject to the one (1) year statute of limitation, and Plaintiff has alleged his employment with Defendant ended more than one year before the Complaint was filed, in 2018.").

As such, the Court will dismiss Plaintiff's sixth claim for failure to provide accurate wage statements pursuant to Labor Code Section 226(a) **WITHOUT LEAVE TO AMEND**.

### 3. Plaintiff's Fourth and Seventh Claims for Relief

In his fourth cause of action, Plaintiff alleges that Defendant failed to pay minimum wages to Plaintiff and putative class members and demands statutory wage penalties pursuant to Labor Code Section 1197.1. (Doc. No. 1-3 ¶¶ 72–73.) In his seventh cause of action, Plaintiff seeks penalties under Labor Code Section 2802 for unreimbursed business expenses. (*Id.* ¶¶ 13(k), 86, 89.) Claims seeking statutory penalties have a one-year statute of limitations. *See* Cal. Code Civ. Proc. § 340(a). As California Labor Code Sections 1197.1 and 2802 provide for statutory penalties, and as Plaintiff failed to bring his claims within the one-year statute of limitations, he is barred from seeking statutory penalties pursuant to Sections 1197.1 and 2802. These requests for penalties are **STRICKEN** from the Complaint.

### 4. Plaintiff's Claims for Injunctive Relief

Lastly, Defendant asks the Court to either dismiss or strike Plaintiff's injunctive relief request pursuant to California Labor Code Section 226(g) (relating to accurate and itemized wage statements) and California Business and Professions Code Section 17200, et seq. (the "UCL"). (Doc. No. 4 at 22.) Defendant argues that as a former employee of Defendant's, Plaintiff lacks standing to sue for injunctive relief. Defendant is correct.

The Supreme Court has held that "plaintiffs no longer employed by [a defendant] lack standing to seek injunctive or declaratory relief against its employment practices." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Milligan v. Am. Airlines, Inc.*, 327 F. App'x 694, 696 (9th Cir. 2009) ("[Plaintiff] does not have standing to seek injunctive relief under Section 226(g)."). Similarly, the Ninth Circuit has held in cases specifically arising under the UCL that injunctive relief is precluded as a matter of law for plaintiffs no longer employed by defendant companies. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011). Accordingly, Plaintiff's claim for injunctive relief under Labor Code Section 226(g) and the UCL is **DISMISSED WITHOUT LEAVE TO AMEND**.

## IV. CONCLUSION

For all the reasons stated herein, the Court **DENIES** Plaintiff's motion to remand

the action. (Doc. No. 9.) Defendant's motion to dismiss and/or strike is **GRANTED**. (Doc. No. 4.) However, the Court **GRANTS** Plaintiff leave to file an Amended Complaint consistent with this order. If he so chooses, Plaintiff must file any Amended Complaint within fourteen (14) days of this order.

**IT IS SO ORDERED.**

Dated: June 29, 2021

Hon. Anthony J. Battaglia
United States District Judge